UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

GRETCHEN CARRENO                                           CASE NO.

    Plaintiff,

v.

EULEN AMERICA, INC.

    Defendant.
_____/

## COMPLAINT

COMES NOW Plaintiff, GRETCHEN CARRENO (hereafter referred to as "Plaintiff"), by and through his undersigned counsel, and hereby sues Defendant, EULEN AMERICA, INC. (hereafter referred to as "Defendant") and as grounds alleges:

### JURISDICTIONAL ALLEGATIONS

1. This is an action to recover monetary damages, liquidated damages, interest, costs, and attorney's fees for willful violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et. seq., and the Florida Civil Rights Act of 1992, Florida Statutes, Chapter 760, et seq. ("FCRA"), to redress injuries resulting from Defendant's unlawful, religion-based discriminatory treatment against Plaintiff.

### PARTIES

2. Plaintiff, GRETCHEN CARRENO, is an adult, female resident of Miami-Dade County, Florida.

3. Defendant, EULEN AMERICA, INC. is a Florida corporation authorized to conduct business in the State of Florida and in Miami-Dade County, Florida.

4. Defendant was a "person" and/or "employer" pursuant to Florida Civil Rights Act of 1992, Fla. Stat. Sec. 760.01, *et seq.* since it employs fifteen or more employees for the applicable statutory period; and it is subject to employment discrimination provisions of the applicable statute, the FCRA.

5. Defendant is a "person" within the purview of the Florida Civil Rights Act of 1992, Fla. Stat. Sec. 760.01, et seq.

6. At all times material hereto Defendant was an "employer" within the meaning of Florida Civil Rights Act of 1992, Fla. Stat. Sec. 760.01, et seq.

7. At all times material hereto Plaintiff was an "employee" within the meaning of Florida Civil Rights Act of 1992, Fla. Stat. Sec. 760, et seq.

8. Defendant is a "person" and/or an "employer" pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq., since it employs fifteen or more employees for the applicable statutory period; and it is subject to the employment discrimination provisions of the applicable statute.

9. Defendant is a "person" within the purview of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq.

10. At all times material hereto Defendant is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq.

11. At all times hereto, Plaintiff was an "employee" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sections 2000e et seq.

12. Plaintiff is a female former employee of the Defendant and is a member of a class of persons protected from discrimination in her employment.

## JURISDICTION AND VENUE

13. This Honorable Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§131, 1343, and 1367.

14. Venue is proper because the events/employment practices alleged in this Complaint to be unlawful were committed in Miami-Dade County, within jurisdiction of this Honorable Court.

15. Plaintiff filed a charge of discrimination against Defendant with the Equal Opportunity Commission (hereafter referred to as "EEOC") and the Florida Commission on Human Relations (hereafter referred to as "FCHR").

16. Plaintiff files this complaint within 90 days after receiving a Notice of Right to Sue from the EEOC.

17. All conditions precedent for the filing of this action before this Honorable Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

## FACTUAL ALLEGATIONS

18. Plaintiff is also an individual of the Yoruba (Afro-Cuban Religion) faith and shares in common a faith/religion, culture, ancestry and other social and religious characteristics with other individuals of the Yoruba faith. Plaintiff is a member of a class of persons protected from discrimination in his employment under Title VII of the Civil Rights Act, as amended.

19. Plaintiff has practiced the Yoruba faith since she was a child.

20. On or about August of 2015, Plaintiff became employed by Defendant as an agent.

21. Plaintiff was later promoted to supervisor.

22. On or about April of 2019, Plaintiff had to travel to Cuba to take partake in a religious ceremony. Plaintiff was on the path of becoming a saint within the Yoruba religion.

23. Plaintiff informed Defendant about her trip to Cuba for religious reasons.

24. To become a saint, Plaintiff was required to wear white clothes and a turban around her head for a year.

25. Plaintiff reviewed the dress code in Defendant's handbook to confirm if she could wear white clothes at work.

26. According to Plaintiff's understanding of the handbook, as a supervisor, Plaintiff did not have to wear a uniform. Plaintiff's only clothing requirement was to wear formal clothes regardless of color.

27. Plaintiff consulted with the general manager, Raul Espino, about wearing white clothing for a year to clear any doubts. Mr. Espino response that he was going to speak with Gema Angulo from Human Resources.

28. A week later, Plaintiff was told by Raul Espino, that she only needed to wear formal clothing, regardless of color.

29. As such, when Plaintiff returned from Cuba, she wore white clothing and white turban to work.

30. Upon Plaintiff's return from Cuba, Defendant offered Plaintiff the position of manager, but due to a personal issue, she could not accept at the time.

31. On or about May of 2019, a new manager, Saigo Acosta, began working for Defendant.

32. Ms. Acosta asked Plaintiff every week when Plaintiff's religious procedure would be completed.

33. Ms. Acosta told Plaintiff that the general manager, Alexis Hernandez, Lilian from Human Resources, and other managers were not in agreement with Plaintiff's clothing.

34. Plaintiff responded that her religious procedure would end in April of 2020.

35. On or about June 10, 2019, Ms. Acosta met with Plaintiff and told Plaintiff that she needed to request an accommodation to wear white clothing.

36. On or about June 12, 2019, emailed Defendant with her religion dress code request.

37. After Plaintiff's return from Cuba and her formal dress code request, Plaintiff was subjected to harassment and discrimination by her managers and supervisors who are not of the Yoruba faith.

38. On or about January of 2020, Plaintiff applied for a managerial position, but Defendant never responded to her request.

39. The general manager treated Plaintiff differently than other similarly situated employees.

40. For example, on one occasion, a passenger's luggage was lost and when the luggage was found, the passenger gave Plaintiff's co-worker, Diana Ferro, a $200 tip to split with Plaintiff. Plaintiff was placed under investigation and was now allowed to accept the tip, which she never did. However, Diana Ferro kept the tip.

41. Additionally, Plaintiff had a Muslim co-worker, Nadira. Ms. Nadira was never asked about her religion or her wearing of a turban like Plaintiff was asked constantly.

42. On or about February 26, 2020, Javier Pinto, manager for Defendant, informed Plaintiff that the managers wanted to have a meeting with Plaintiff to discuss her clothing.

43. Plaintiff immediately emailed Gema Angulo, Lilian Garcia, and others, explaining that she felt discriminated against because of her religion.

44. On or about March 11, 2020, Plaintiff was called into Mr. Acosta's office. As she walked into his office, Mr. Acosta and Lilian Garcia both asked Plaintiff when her religious procedure would be over.

45. Plaintiff once again answered that it would end on April 22, 2020.

46. Plaintiff again expressed that she felt discriminated.

47. When the meeting ended, Plaintiff once again emailed Human Resources to express the discriminatory treatment.

48. On or about March 25, 2020, as a result of Plaintiff's Yoruba religious faith, Plaintiff's employment was terminated by Defendant.

49. Plaintiff was qualified to do the job.

50. Plaintiff endured constant discrimination by Defendant relating to her religion. Defendant made Plaintiff the target of discrimination which resulted in a hostile working environment for Plaintiff.

51. Employer's conduct was knowing, malicious, willful and wanton, and/or showed a reckless disregard for Plaintiff.

52. Plaintiff reported the discriminatory treatment multiple times.

53. The Employer failed to properly investigate Plaintiff's complaints to prevent the unlawful discriminatory and harassing conduct.

54. As a result of the aforementioned treatment by Defendants, Plaintiff suffered substantial economic and non-economic damages, harm to his professional and personal reputation, severe mental anguish, and embarrassment.

55. On or about June 29, 2020, Plaintiff filed a complaint with the U.S. Equal Employment Opportunity Commission (hereafter referred to as the "EEOC").

56. On or about November 30, 2020, the EEOC issued a "Notice of Suit Rights" to Plaintiff.

## **COUNT I- DISCRIMINATION BASED ON RELIGION**

57. Plaintiff realleges and reaffirms the allegations contained in the above paragraphs 1 through 56, as if fully set forth herein.

58. Defendants engaged in and allowed policies and practices that willfully, intentionally, and unlawfully discriminated against Plaintiff based on her religion. Defendants have engaged in a pattern of continuous discrimination against Plaintiff because she is of the Yoruba faith.

59. Defendants were aware that various activities at its facilities created a hostile work environment for Plaintiff. Plaintiff was singled out for mistreatment in a discriminatory manner because of her religion. Defendants participated in, were aware of, and/or allowed the discrimination. Defendants knew such actions were unlawful but acted in reckless disregard of the law.

60. Defendants' conduct complained of here was willful and in disregard of Plaintiff's protected rights.

61. Plaintiff would have continued in her employment with Defendant, entitled to her wages and benefits, but for the discriminatory conduct of Defendants.

62. As a direct and proximate result of Defendants' discriminatory acts and/or omissions, Plaintiff suffered an adverse employment action, and was unreasonably subjected to a hostile workplace, based on her religion.

63. The conduct of Defendants, by and through the conduct of its employees, agents, and/or representatives, and the Defendants' endorsement of discriminatory activities, and Defendants' failure to address, mitigate, and/or take remedial actions to prevent such

discrimination toward Plaintiff, deprived Plaintiff of her statutory rights under federal and state law.

64. As a result of Defendants' acts and/or omissions, Plaintiff suffered both irreparable injury and compensable damages.

**WHEREFORE**, Plaintiff, GRETCHEN CARRENO, respectfully requests this Honorable Court enter judgment for Plaintiff and against Defendant containing the following relief:

a) A declaratory judgment that the aforementioned actions, conduct, and practices of Defendants violate the laws of the United States and the State of Florida;

b) An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all monetary and or economic harm;

c) An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including, but not limited to, compensation for her mental anguish, humiliation, embarrassment, stress, anxiety, emotional pain and suffering, emotional distress, and /or physical injuries;

d) An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus pre-judgment interest;

e) An award of punitive damages;

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims.

Respectfully submitted,

**GALLARDO LAW OFFICE, P.A.**

*Attorney for Plaintiff*
8492 SW 8th Street
Miami, Florida 33144
Telephone (305) 261-7000
Facsimile (786) 261-0088

By: _____
Elvis J. Adan, Esq.
Florida Bar No. 24223
Email: elvis.adan@gallardolawyers.com